**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                    :
ROBERT HAIRSTON,                    :
                                    :   Civil Action No.
            Petitioner,             :   09-5971 (RMB)
                                    :
        v.                          :   **MEMORANDUM OPINION**
                                    :   **AND ORDER**
WARDEN M.P. HEFFRON,                :
                                    :
            Respondent.             :
_____ :

This matter comes before the Court upon submission of Petitioner's application for habeas corpus relief, pursuant to 28 U.S.C. § 2241.[1]  See Docket Entry No. 1.  This Court directed Respondent to answer Petitioner's challenges, and Respondent duly complied.  See Docket Entries 2 and 5.  Petitioner duly filed his traverse, see Docket Entry No. 6, with regard to which Respondent filed her sur-reply.[2]  See Docket Entry No. 7.

For the reasons detailed below, the Petition will be dismissed, with prejudice.

---

[1] The Petition arrived unaccompanied by Petitioner's filing fee or his in forma pauperis application.  See Docket Entry No. 1.  Petitioner later submitted his in forma pauperis form.  See Docket Entry No. 3.

[2] At the time of Petitioner's initiation of this matter, warden Heffron was properly named as Respondent.  Current warden Zickefoose has become the proper Respondent upon succeeding warden Heffron.

It appearing that:

1. The facts underlying Petitioner's challenges (and the rationale of Petitioner's position) are largely undisputed, supported by extensive record filed in this matter and summarized by Respondent as follows:

> [Petitioner] is a federal inmate at the Federal Correctional Institution Fort Dix in New Jersey ("FCI Fort Dix"). His . . . Petition . . . stems from [an] incident [that took place] in the early hours of December 5, 2008[, when Petitioner] punched an[other] inmate named David Majeski ("Majeski") in the face several times. Bloodied, Majeski did not respond. Despite admitting [during his administrative proceedings the fact of him] punching another inmate in the face, [Petitioner] seeks to[: (a)] expunge the disciplinary finding that he had been fighting and [(b) vacate] the resulting sanction. [Petitioner] concedes that he was charged with violating the Bureau of Prisons' ("BOP") regulation against "fighting with another person" (an infraction known as "Code 201"). [Petitioner, however,] contends that he could not have violated Code 201, because fighting involves two or more people and [neither Majeski nor any] other inmate was charged [in connection with the incident. In other words, Petitioner first asserts] that he was charged with violating a regulation that he could not have violated [because of lack of charges against Majeski, and then Petitioner] leaps to the conclusion that prison authorities violated his due process rights by not informing him of the charge [that, according to his logic, he could not have violated]. . . . [The record, however, unambiguously indicates that Petitioner] was informed of the Code 201 charge against him less than 12 hours after he [physically attacked and injured] Majeski[.[3] The record also

---

[3] [Petitioner] admitted to . . . Lieutenant Kaough . . . that he had punched Majeski several times in the face after Majeski had removed a photograph of President

>indicates that Petitioner] received a hearing before an independent officer [and] the hearing officer's determination that [Petitioner] violated Code 201 was . . . supported by [abundance of] evidence [entered in the record], including [Petitioner's] own admission that he [indeed] punched Majeski in the face. . . . [Moreover, Petitioner] cites no legal support for his assertion – and there is none [existing in the BOP's regulations or interpretative statements] – that a Code 201 violation requires that at least two inmates be charged. [In sum, Petitioner's position is entirely pegged on Petitioner's own, self-serving, interpretation of Code 201.]

Docket Entry No. 5, at 6-7.

2. The bulk of Petitioner's position was exhaustively addressed in Respondent's answer summarizing the applicable legal regime and applying these legal principles to the facts at bar. This Court, therefore, finds little need for reciting the points already addressed by Respondent and – operating on presumption that Petitioner is well familiar with Respondent's position – will provide, below, a mere summary of this analysis: for

---

>Obama from [Petitioner and Majeski's] cell door and placed it on [Petitioner's] bed. [Petitioner] stated that he punched Majeski because Majeski had acted "disrespectful[ly]." Lieutenant Kaough completed [Petitioner's] Incident Report at 3:00 a.m. on December 5, 2008, [that is, about three hours after Petitioner injured Majeski; this report] charged [Petitioner] with violating Code 201. This [Code] refers to the BOP regulations' "prohibited act" of "fighting with another person." 28 C.F.R. § 541.13. The Incident Report was delivered to [Petitioner] at 11:30 a.m. that same day. The officer who delivered the report advised [Petitioner] of his rights in the disciplinary process.

Docket Entry No. 5, at 10 (citations to record omitted).

      completeness of this Court's review.

3.   However, two key points omitted from Respondent's argument warrant a more detailed discussion. Specifically:

   a.   Petitioner's application for expungement of record is facially meritless, and this outcome does not depend on the invalidity of Petitioner's due process challenges. The only case in this Circuit on the issue of expungement is <u>Williams v. Federal Bureau of Prisons</u>, 85 Fed. App'x 299 (3d Cir. 2004), a case decided before the Supreme Court's ruling in <u>Wilkinson v. Dotson</u>, 544 U.S. 74 (2005). In <u>Williams</u>, the inmate filed a habeas petition claiming that federal officials had improperly refused to delete false information contained in his prison file. <u>See</u> <u>Williams</u>, 85 Fed. App'x at 303. Examining that petition, the magistrate judge employed the rationale later articulated by the Supreme Court in <u>Wilkinson</u> and "concluded that, since [the inmate's] habeas claims did not challenge the length of his confinement, the habeas petition [had to] be construed as a <u>Bivens</u> action."[4] <u>Id.</u>

---

[4] As § 1983 action applies only to state actions, it is not available to federal prisoners; the federal counterpart is an action under <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), alleging deprivation of a constitutional right. <u>See</u> <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 801 (3d Cir. 2001) ("A <u>Bivens</u> action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal law").

The district court adopted the magistrate judge's conclusion and, eventually, dismissed the petition. <u>See id.</u> The inmate appealed. Addressing the issue, the Court of Appeals observed as follows:

> We have never had to decide whether to endorse the right of expungement announced in <u>Paine v. Baker</u>, 595 F.2d 197 (4th Cir.1979), and other Circuit Courts of Appeals have expressly questioned its precedential value. [<u>See</u>, <u>e.g.</u>,] <u>Johnson v. Rodriquez</u>, 110 F.3d 299, 308-09 n. 13 (5th Cir. 1997). Nevertheless, [the inmate in <u>Williams</u>] argues that his . . . prison file expungement claim are meritorious under <u>Paine v. Baker</u>. There, the Court of Appeals for the Fourth Circuit announced that, in limited circumstances, state prisoners have a federal due process right to have "prejudicial erroneous information expunged from their prison files." [<u>Paine</u>,] 595 F.2d at 202. The [<u>Paine</u>] court held:
>
>> In certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied upon to a constitutionally significant degree.
>
> <u>Id.</u> at 201. [The inmate in <u>Williams</u>] argues that he can assert <u>Paine v. Baker</u> expungement claims in a § 2241 habeas petition. Even if we assume <u>arguendo</u> that [an inmate] can assert a <u>Paine v. Baker</u> expungement claim in a § 2241 habeas petition, it is nevertheless clear that he is not entitled to relief [of expungement of] his prison file [if the information on his file is true].

<u>Williams</u>, 85 Fed. App'x at 303. The Court of Appeals' use of the "arguendo" language, read in light of the Supreme Court's later decision in <u>Wilkinson</u> (as well as

Page -5-

in light of the Court of Appeals' decisions in <u>Ganim v. Federal Bureau of Prisons</u>, 235 Fed. Appx. 882 (3rd Cir. 2007), and <u>Bronson v. Demming</u>, 56 Fed. App'x 551, 553-54 (3d Cir. 2002)) indicates that an expungement claim falls outside § 2241 jurisdiction and has to be raised in a <u>Bivens</u> action, since expungement <u>per se</u> does not affect the prisoner's duration of confinement.[5] This Court, therefore, will dismiss Petitioner's expungement challenges for lack of habeas jurisdiction.[6]

b. Petitioner's application seeking <u>vacatur</u> of his disciplinary sanctions rides, entirely, on Petitioner's: (a) own, self-serving, reading of Code 201; and (b) conclusion that the BOP's failure to apply *Petitioner's reading* to Code 201 renders the BOP's determination a violation of Petitioner's rights. Petitioner errs as to the standard of review applied to administrative

---

[5] Moreover, even if the decisions in <u>Wilkinson</u>, <u>Ganim</u> and <u>Bronson</u> can, somehow, be harmonized with <u>Paine</u>, Petitioner here is not entitled to relief under <u>Paine</u>: simply because he concedes that his fight with Majeski actually took place and, thus, Petitioner's prison file information about this fight cannot, by definition, be false.

[6] However, the entire Petition, including Petitioner's expungement challenge, will be dismissed with prejudice since – while this Court is seemingly without jurisdiction to grant Petitioner habeas relief as to his expungement claim, dismissing this claim without prejudice to Petitioner's bringing a <u>Bivens</u> action on the grounds of this claim appears superfluous, since – substantively – Petitioner's claim is, too, without merit. <u>See</u> note 5, this Memorandum Opinion and Order.

determinations.  This standard has been conclusively set forth in <u>Chevron U.S.A Inc. v. Nat'l Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984).  Under <u>Chevron</u>, the courts review inmates' challenges to agency decisions by conducting the following analysis:

> First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the [underlying provision].

<u>Id.</u> at 842-43 (footnotes omitted).[7]  Consequently, this Court is without power to second guess a BOP's interpretation: the Court's mandate to overrule the BOP's decision could be utilized only if the Court determines that the BOP abused its discretion, and the Court may not substitute its judgment for the agency's judgment.  <u>See</u>

---

[7] Even where the agency construction appears in an "interpretive" rule not subject to the "notice-and-comment" procedure of the Administrative Procedure Act, the agency's interpretive rule is entitled to deference where it is a permissible construction of the governing statute.  <u>See</u> <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995).

Chevron, 467 U.S. 837; Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir.1994) ("a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another"); see also Negev Phosphates, Ltd. v. United States, 699 F. Supp. 938, 942 (C.I.T. 1988) (the court must sustain an agency's determination if it is reasonable and supported by the record "as a whole").  Since, here, Petitioner points to no congressional language expressly stating that Code 201 violation could be charged only in the event if both the victim and the attacker (or both participants in the fight) are charged with the infraction, this Court's review of the BOP's construction of Code 201 is limited solely to the issue of reasonableness of such construction, i.e., to the inquiry as to whether the BOP abused its discretion by construing Code 201 as a regulation: (i) construing the term "fight" as both an "altercation" and an "attack"; and (ii) allowing disciplinary charges against the attacker but not the victim.  This Court finds the BOP's construction facially reasonable since: (i) the term "fight" is commonly used in substitute of the term "attack";[8] and

---

[8] Indeed, such construction is the first choice offered by the Merriam-Webster dictionary. See <<http://www.merriam-webster.com/dictionary/fight>> ("fight [means] to contend in battle or

       (ii) it would be anomalous to reward the attacker with knowledge that (s)he succeeded at not just physically injuring his/her victim but also at injecting a disciplinary record and sanctions into the victim's prison term. Petitioner's construction puts the rationale of Code 201 on its head, and cannot be allowed.[9] Therefore, Petitioner's challenge that he was charged with a violation, which – under his version of a "technical reading" of Code 201 – he could not have committed, will be dismissed, as facially meritless.

4.   The remainder of challenges raised in the Petition is without merit for the reasons extensively articulated in Respondent's brief. Indeed:

   a.   Under <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), the due process requirements (as to the procedural aspect of an administrative hearing) are satisfied if the inmate receives: (i) written notice of the charges at least 24 hours before his/her disciplinary hearing; (ii) a written statement by the hearing officer of the evidence relied upon and the reasons for the disciplinary action; and

---

physical combat; especially: to strive to overcome a person by blows or weapons").

    [9] Alternatively, this Court has little trouble fancying the dire degree of chaos prison facilities would encounter were inmates allowed to escape administrative charges merely on the grounds that their victims were not disciplined.

        (iii) an opportunity to call witnesses and present documentary evidence when such measures are not unduly hazardous to institutional safety or correctional goals. See id. at 563-66. The record is this matter establishes, with abundance, that Petitioner's rights under Wolff were duly protected.

b.   When a penalty lengthening a sentence is imposed, the Due Process Clause also requires – with regard to the substantive sanctions imposed – that "some evidence" be produced to support the decision of the hearing officer. See Superintendent v. Hill, 472 U.S. 445, 457 (1985). The process of ascertaining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence."[10] Hill, 472 U.S. at 455-56; see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to a federal prisoner's due process challenges to prison disciplinary proceedings). Here, there is no dispute that charges against Petitioner were supported by

---

[10] Hence, there is no question that the "some evidence" standard is less exacting than the preponderance of the evidence standard: it merely requires that the decision not be arbitrary or not without any support in the record. See, e.g., Gaither v. Anderson, 236 F.3d 817, 819 (7th Cir. 2000); accord Brown v. Fauver, 819 F.2d 395 (3d Cir. 1987); Gibbs v. King, 779 F.2d 1040, 1044 (5th Cir. 1986).

        "some evidence": Petitioner himself conceded that he hit and injured Majeski. Therefore, the <u>Hill</u> requirements were also met – and with abundance – in the case at bar.

5. Consequently, the Petition does not merit habeas relief and will be dismissed. The sole remaining points are two minor aspects raised in Petitioner's traverse. <u>See</u> Docket Entry No. 6. In his traverse, Petitioner seems to: (a) assert, vaguely, a challenge that he was not served with an incident report within 24 hours of his assault on Majeski;[11] and (b) alleges that he should have been charged with Code 224 violation (rather than Code 201) since Code 224's heading reads "assaults on any person," that is, in comparison to "fights with another inmate" (heading of Code 201). <u>Id.</u> None of Petitioner's newly-minted arguments merit relief.

    a. First, as Respondent duly observes, Petitioner's new challenges are improperly raised, since "a litigant cannot plead claims, state and/or support facts by any non-pleading document, be it moving papers, an opposition to adversaries' motion, the litigant's traverse, etc." <u>Animal Sci. Prods. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.</u>, 702 F. Supp. 2d 320, 365 (D.N.J. 2010).

---

[11] The record, however, establishes factual falsity of Petitioner's position. However, even if the Court were to ignore this falsity, Petitioner's position is without merit since there is no dispute that he received a written notice about his charges more than 24 hour prior to his hearing.

b.  Even if the Court were to overlook this impropriety, the speed with which Petitioner was served with his incident report, while perhaps relevant to the matters of prison administration, is wholly irrelevant to this Court's habeas review, since – under Wolff – the Court's temporal inquiry focuses only on the requirement that Petitioner was notified, in writing, of his charges at least 24 hours before his disciplinary hearing. Accord Silcox v. Scism, 2010 U.S. Dist. LEXIS 52993, at *9 (M.D. Pa. May 28, 2010) (short of the written-notice-24-hours-prior-to-hearing, Wolff does not impose any other temporal requirements. "The Constitution only requires compliance with minimal federal due process standards protected by the Due Process Clause of the Fourteenth Amendment. Wolff does not set [any other] time limit"). Here, there is no dispute that, 24 hours prior to his hearing (and long prior to that), Petitioner had a written notice informing him of his disciplinary charges.

c.  Analogously, even if this Court were to disregard the procedural impropriety of Petitioner's second newly-minted claim, Petitioner's assertion that he should have been charged with a Code 224 infraction rather than Code

201 violation is without merit.[12] This Court has no authority to second-guess the BOP's selection of charges, it merely has the authority to determine the reasonableness of the BOP's construction of the provision actually charged and the presence of "some evidence" in support of sanctions imposed in connection with that charge. Here, as this Court's discussion of Chevron and Hill demonstrates, the BOP's construction of Code 201 and imposition of sanctions under that particular provision did not violate Petitioner's rights. See, e.g., Hudson v. Zickefoose, 2010 U.S. Dist. LEXIS 120936, at *3 (D.N.J. Nov. 15, 2010) (inmate's preference for being charged under Code 305 instead of Code 108 is of no import if the BOP's construction of Code 108 – as applying to the inmate's infraction – was not an abuse of discretion, and the sanctions imposed were supported by some evidence) (citation omitted).

    d.    Since Petitioner's traverse challenges are improperly

---

[12] The rationale of this newly-minted challenge is not entirely clear to the Court since both Code 201 and Code 224 fall within the same group of "High Category" offenses, see 28 C.F.R. § 541.13, resulting in the same range of disciplinary sanctions. Moreover, since Petitioner cannot show that being charged with a Section 224 infraction (rather than a Section 201 one) would have resulted in a different sanction (capable of differently affecting Petitioner's term of imprisonment by means of different loss of good-conduct credit), Petitioner's challenges based on the distinction between Code 224 and Code 201 seem to fall outside habeas review under Wilkinson, Ganim and Bronson.

raised and, in addition, wholly meritless, these challenges will, too, be dismissed.

IT IS, therefore, on this **21st** day of **December 2010**,

**ORDERED** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is dismissed, with prejudice; and it is further

**ORDERED** that the Clerk shall serve a copy of this Order upon Petitioner, by regular U.S. mail, and upon Respondent, by means of electronic delivery; and it is finally

**ORDERED** that the Clerk shall close the file on this matter by making a new and separate entry on the docket reading "CIVIL CASE CLOSED."

s/Renée Marie Bumb
**Renée Marie Bumb**
**United States District Judge**